KLOPPENBURG, J.[1]
¶1 Ray Peterson filed this small-claims action in which he (1) alleged that Stanley Beatty, doing business as Abner Boiler and Heating Company, was responsible for the failure of a boiler approximately one year after Beatty installed the boiler, and (2) sought reimbursement of the cost to replace that boiler. After a trial to the circuit court, the court found that Peterson "[had] not met [his] burden of proof" and dismissed the case. Peterson challenges the court's finding on appeal. Beatty moves for costs and fees as allowed for a frivolous appeal under WIS. STAT. RULE 809.25(3). For the reasons stated below, I affirm the circuit court's decision. I also grant Beatty's motion and I remand to the circuit court for an assessment of costs and fees.[2]
BACKGROUND
¶2 As stated, Peterson filed this small-claims action against Beatty alleging that Beatty improperly installed a boiler that cracked and had to be replaced within a year of its installation. Because Peterson's appeal is directed at the circuit court's consideration of the trial testimony, I review that testimony in detail.
¶3 Peterson and Peterson's office manager testified as follows. Peterson paid Beatty $ 4,500 to obtain and install a new boiler at a residential rental property in November 2016, and approximately eleven months later the boiler failed. Peterson contacted Beatty when the boiler failed, and Beatty inspected the boiler and informed Peterson that the boiler was corroded and cracked due to lime buildup inside the boiler, and that the cracking was not due to the manufacture or installation of the boiler. Beatty provided an estimate of $ 4,800 for installing a new boiler, which Peterson did not accept. Peterson paid $ 4,929 to Jim McCue of Al Beyers Indoor Comfort Systems to replace the old boiler with a new boiler. McCue sent Peterson an email stating that the boiler failed because the "pressure reducing valve" was not adjusted properly, which caused fresh water to be continually added to the boiler system and overflow into the basement, resulting in the deposit of lime that destroyed the boiler.
¶4 Beatty testified as follows. He has owned Abner Boiling and Heating since 1961 and installed the boiler in November 2016 with Ty Blakeborough. He agreed with McCue that the boiler was destroyed because of lime buildup resulting from water being continually added to the boiler system and overflowing into the basement, and explained that once the valve is closed, "there is no more water being added to that system unless somebody else opens" the valve. He and Blakeborough closed the valve when they installed the boiler, so someone else had to have subsequently opened it without closing it for the fresh water to have been continually added to the system.
¶5 Ty Blakeborough testified as follows. He installed hundreds of boilers in the twelve years that he has worked for Abner Boiling and Heating, including the boiler for Peterson. He and Beatty closed the fill valve after ensuring that there was enough pressure to heat all three floors of the residence. They closed the fill valve so that water would not be continually added to the system and overflow into the basement. They had "[n]ever had an issue" with closing the fill valve before. Someone else had to have manually opened that valve without closing it to permit the water to flow through the system causing the lime deposit that cracked the boiler after Beatty and Blakeborough had completed the installation. Blakeborough agreed with McCue that the water being continually added to the system and overflowing into the basement resulted in the lime deposit that cracked the boiler. The reason the water was flowing was that someone opened the valve that Beatty and Blakeborough had left closed, without closing it.
¶6 Peterson testified that he did not agree that it was lime that cracked the boiler. He testified specifically in response to Blakeborough's and Beatty's testimony as follows. The boiler is an automatic closed system that shuts off the burner when the water pressure runs down, and that someone, "probably" Peterson's maintenance person, had to open the valve when the water pressure goes below a certain level, to let water enter the system and start the burner.
¶7 Blakeborough and Beatty testified that Peterson was not correct that the valve has to be manually opened when the water pressure goes below a certain level, and that there is no low water pressure cutoff on the boiler they installed.
¶8 The circuit court found that the lime caused the boiler to crack. The court also found that Peterson had no response to the testimony by Blakeborough and Beatty that they properly closed the valve when they installed the boiler and there would not be water flowing into the basement unless someone manually opened the valve without closing it. The court stated that Peterson did not present any witness to testify that Blakeborough and Beatty should have done something different. The court noted Blakeborough's and Beatty's years of experience installing boilers and found their testimony credible. The court found that Peterson had not met his burden of proof and dismissed his complaint. Peterson appeals.
DISCUSSION
¶9 Peterson challenges the circuit court's finding that he did not prove that Beatty improperly installed the boiler and that the improper installation caused the boiler to crack and fail. Peterson cites no legal authority nor argues that the court made any error of law. Rather, he argues, so far as I can discern, that he presented sufficient evidence to support his allegations and that the court erroneously relied on the testimony of Beatty and Blakeborough in its finding to the contrary. His arguments lack merit for the following reasons.
¶10 First, Peterson adds allegations and claims that he did not make before the circuit court. For example, he asserts that he "was charged for an automatic water fill boiler that he never received," that the boiler cracked because it was of an inadequate size, that the boiler's failure was related to its having been subject to a recall for vent leaks in its system, and that Beatty's installation violated WIS. STAT. § 100.20(5). However, he has forfeited these issues because he did not raise them before the circuit court. See State Farm Mut. Auto. Ins. v. Hunt , 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 (" '[a]rguments raised for the first time on appeal are generally deemed forfeited' ") (quoted source omitted); Townsend v. Massey , 2011 WI App 160, ¶26, 338 Wis. 2d 114, 808 N.W.2d 155 (This court declines to consider new arguments or theories when doing so would "seriously undermine the incentives parties now have to apprise circuit courts of specific arguments in a timely fashion so that judicial resources are used efficiently and the process is fair to the opposing party."). Therefore, I do not consider these issues further.
¶11 Second, Peterson presents his own explanations of how the boiler installed by Beatty and Blakeborough worked and what caused it to fail. However, he does not cite to any evidence in the record to support his explanations other than his own testimony in the record, and the circuit court discredited that testimony because of Peterson's lack of experience and expertise as compared to the experience and expertise of Beatty and Blakeborough, whose testimony the court found credible. This court defers to the circuit court's resolution of discrepancies or disputes in the testimony, its assessment of the relative credibility of witnesses, and its determinations of what weight to give particular testimony. Johnson v. Merta , 95 Wis. 2d 141, 151-152, 289 N.W.2d 813 (1980) ; see also WIS. STAT. § 805.17(2) ("due regard shall be given to the opportunity of the [circuit] court to judge the credibility of the witnesses"); see also Cogswell v. Robertshaw Controls Co. , 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979) ("[W]hen the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.") (citations omitted).
¶12 Third, Peterson takes issue with the circuit court's reliance on testimony by Beatty and Blakeborough. Specifically, Peterson argues that the court erroneously relied on Beatty's testimony because it contained two factual errors as to whether there was a sump pump in the basement and where the water shut-off valve was located, and therefore showed that Beatty had not actually installed the boiler. Peterson also argues that the court erroneously relied on Blakeborough's testimony because it did not accurately describe how the boiler worked and therefore showed that he "knew absolutely nothing about" the boiler he installed. However, Peterson does not support these arguments with citations to the record, and "[i]t is not this court's responsibility to sift and glean the record in extenso to find facts supporting [the party's] argument." Jensen v. McPherson , 2004 WI App 145, ¶6 n.4, 275 Wis. 2d 604, 685 N.W.2d 603. Moreover, as stated above, the circuit court found both Beatty and Blakeborough's testimony credible as to their installation of the boiler and as to how the boiler operated and what caused it to crack. That Peterson disagrees with their testimony does not provide a basis to disturb the court's finding on appeal.
¶13 Fourth, Peterson argues that the circuit court erroneously relied on his own testimony that his maintenance person likely opened the valve. However, Peterson does not explain what evidence he presented to counter that specific testimony, other than by repeating his argument that the boiler could not have been destroyed by the valve being open because of how he says the boiler works. However, I have already explained why it was not clearly erroneous for the court to reject Peterson's testimony about how the boiler worked and was destroyed. And, in light of his specific testimony that his maintenance person likely opened the valve, without any citation to contravening testimony, Peterson cannot now argue that it was clearly erroneous for the court to find that fact. See WIS. STAT. § 805.17(2) ("[f]indings of fact shall not be set aside unless clearly erroneous"); Tufail v. Midwest Hospitality, LLC , 2013 WI 62, ¶23, 348 Wis. 2d 631, 833 N.W.2d 586 (a circuit court's findings of fact will not be overturned unless they are clearly erroneous).
¶14 Peterson may intend to make other arguments, but his briefing is difficult to follow, and I cannot act as his advocate. See State v. Pettit , 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (this court "cannot serve as both advocate and judge" to develop arguments that are inadequately briefed). To the extent that Peterson may intend to make other arguments that I do not directly address, I reject them on the grounds that they are inadequately briefed and lack discernible potential merit.
¶15 I now turn to Beatty's motion. An appeal is frivolous under WIS. STAT. RULE 809.25(3) when "filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another," or when a party or party's attorney "knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." RULE 809.25(c)(3). Peterson has been previously informed of our standards for frivolous appeals. See City of Madison v. Peterson , No. 2015AP1998, unpublished slip op. ¶¶6-7 (WI App Apr. 14, 2016); City of Madison v. Peterson , No. 2015AP2160, unpublished slip op. ¶¶5-6 (WI App Apr. 14, 2016); City of Madison v. Peterson , No. 2016AP805, unpublished slip op. ¶¶ 7-9 (WI App Aug. 25, 2016).
¶16 Applying these standards, I agree with Beatty that Peterson's appeal is frivolous because it has no reasonable basis in law or equity and is not supported by a good-faith argument for an extension of or change in the law. To repeat, Peterson challenges the circuit court's fact-finding in total disregard of the standard of review and cites to nothing in the record to support his challenge in light of that standard of review. Without more, his arguments on appeal are frivolous.
CONCLUSION
¶17 For the reasons stated, I affirm the circuit court's decision, and I conclude that Peterson's appeal is frivolous. I remand to the circuit court for an assessment of costs and fees as allowed by WIS. STAT. RULE 809.25(3).
By the Court. -Order affirmed and cause remanded for further proceedings.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(a) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Peterson also sued Sid Harvey, the distributor that supplied the boiler that Beatty installed for Peterson. The circuit court dismissed Sid Harvey during the trial, finding that Peterson had presented no evidence that the boiler was defective. Sid Harvey has not appeared in this appeal and, so far as I can discern from Peterson's briefing, Peterson does not challenge the court's dismissal of Sid Harvey. Accordingly, I address only Peterson's challenge to the court's dismissal of his claim against Beatty.